UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PEGGY GRIFFIN, and husband, )
RUSSELL GRIFFIN, )
 )
     Plaintiffs, )
 )
v. ) NO.: 2:11-CV-365
 )
WAL-MART STORES EAST. LP, )
 )
     Defendant. )

## MEMORANDUM OPINION AND ORDER

The plaintiffs have filed two Motions to Alter or Amend Judgment, [Docs. 64 and 66].[1] The defendant has responded, [Docs. 65 and 67]. For the reasons set forth below, the motions are DENIED.

**I. Facts**[2]

The facts taken in the light most favorable to the plaintiffs are as follows: On October 16, 2010, Plaintiff Peggy Griffin, who was 76 at the time, fell at the Johnson City, Tennessee Wal-Mart store. She fell at approximately 11:58 a.m. in the health and beauty aids department in the "shampoo aisle." Ms. Griffin stated that she slipped and fell on something slippery but dry on the floor. Shift Manager Hope Dugger testified that where Ms. Griffin fell was slippery.

---

[1] In the defendant's first Response, it states that "to the extent plaintiffs' motion does address any law or facts not raised before the Court previously, plaintiffs should not be allowed to do so at this time. Plaintiffs had ample opportunity previously to raise all facts and law timely." [Doc. 65, pg.1]. In the plaintiffs' second Motion to Alter Judgment, [Doc. 66], they ask the Court to consider the first motion, [Doc. 64], as "Plaintiffs' Brief in Support of this Motion to Alter or Amend Judgment so as to comply with the Rules of the Court," [Doc. 66, pg. 1]. The Court notes that both motions were filed within Rule 59(e)'s proscribed 28-day time frame.

[2] These facts are taken almost verbatim from this Court's September 3, 2013 Memorandum Opinion and Order, [Doc. 62].

Employee Danielle Calhoun, who was instructed to clean the area, stated that the area was "slick as ice." It was so slippery that she almost fell.

The plaintiffs claim that Wal-Mart knew of the dangerous condition on the floor because prior to Ms. Griffin's fall, an unidentified person on the surveillance video appears to examine the floor area where Ms. Griffin fell. The person and her male companion leave the area in the direction of the pharmacy. They then return to the area approximately two minutes later and continue shopping. According to plaintiff's reading of Wal-Mart's practices, safety sweeps of the store were to occur every 30 minutes. One had not occurred between 10:59 a.m. and 11:58 a.m., and the record is unclear as to when the last sweep occurred.

## II. Standard of Review

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). The plaintiffs' motion does not specifically state upon which ground they base their motion. They state, "Plaintiffs respectfully request the Court to modify the facts set out in its Memorandum of Opinion and Order," [Doc. 64, pg. 1], and "The Court erred in not considering all relevant evidence." [Doc. 66, pg. 1]. The plaintiffs "take issue with the Court[']s finding that Wal-Mart did not have notice of the dangerous condition." [Doc. 64 pgs. 1-2]. Thus, it appears the plaintiffs' basis for the motion is that the Court committed a clear error of law.

The defendant is correct that the plaintiffs fail to offer any new facts or law. While they may have pointed the Court to different case law, all of these cases were filed prior to the Court's September 3, 2013 Memorandum Opinion and Order. It is true, however, that *Parker v. Holiday*

*Hospitality Franchising, Inc.*, No. E2013-00727-COA-R3-CV, 2013 WL 4647779 (Tenn. Ct. App. Aug. 27, 2013), was filed on August 27, 2013. Nonetheless, the plaintiffs' arguments, even based on this already existing law, remain the same. The specific issue before the Court is whether Wal-Mart had actual or constructive notice of the spill.

**III. Analysis**

The plaintiffs argue that the Court erred because there was circumstantial evidence that Wal-Mart had actual notice of the floor's condition. The plaintiffs contend that Wal-Mart's surveillance video shows that a couple noticed the floor's condition about 10 minutes prior to the plaintiff's fall. They left the area in the direction of the pharmacy. Then they returned to the shampoo aisle minutes later and continued shopping.

As stated previously, there must be evidence from which the jury could conclude that the defendant had actual notice prior to the accident such that it had a reasonable opportunity to correct or warn against the condition before the accident occurred. *See City of Knoxville v. Ferguson*, 585, 241 S.W.2d 612, 615 (Tenn.App.1951). The surveillance video does not create an issue of fact that Wal-Mart had actual notice. To be sure, this Court had great difficulty discerning what transpired in the surveillance video. The Court watched the video numerous times. The camera angle makes it difficult to see the area near where the plaintiff fell, for the shelves obstruct the view of the shoppers' and the plaintiff's actions. Furthermore, it is difficult to make out details due to the video's quality and the distance the camera was positioned from the incident. In addition, the images of the plaintiff and other shoppers often show them from behind or from the side and rarely head on. This adds to the difficulty in determining what transpired.

3

Again, this Court watched the entire three-hour video clip that was submitted and particular parts several times. From that clip, it is clear that no safety sweep was performed from 10:59 a.m. until the plaintiff fell at approximately 11:58 a.m. It is clear that many shoppers shopped in the area where plaintiff fell without slipping or falling. A few shoppers shopped in the immediate area after the plaintiff fell and after she was carried away but prior to the area being cleaned. None of those shoppers slipped or fell.

The plaintiff relies heavily upon the actions of an unidentified couple for evidence regarding notice. Therefore, this Court will set forth their actions. When the video clip's timer reads approximately 39:45, the couple walks to the middle of the aisle to the right of the aisle in question. They then move closer to the end of this aisle, and their actions are obstructed by a sign hanging from the ceiling, which is located in front of the surveillance camera. They shop in that area until 44:50. At point, they walk up this adjacent aisle towards the camera. They exit the camera's view. They then come back into view walking up the aisle in question, away from the camera, and towards the area where the plaintiff fell. They did not appear to have trouble walking on the area where the plaintiff fell. They pass this area at approximately 45:30 and stop at the end of the shelves. Their actions are obstructed by the shelf and the sign on the ceiling; however, it appears that the woman is bending down behind the end shelf.

At approximately 46:13 the couple's cart becomes visible at the end of the adjacent aisle. The man pushed it into the aisle. At 46:21, he walks away from the aisle towards the right of the camera's view, and then he exits the camera's view.[3] At that same time and while the man's back is to the woman, she leans outward from the end of the shelf into the aisle in question. It is unclear as to what she actually did, if anything, when she leaned into the aisle in question. The man is over an aisle away when the woman returns to the back of the shelf. At 46:27, the woman

---

[3] The record reflects that this direction is towards the pharmacy.

4

walks around to the adjacent aisle. At 46:35, she is in the other aisle, she turns the cart around, and she walks in the same direction as the man at 46:45 out of the camera's view.

The couple returns to the adjacent aisle at approximately 48:26. The woman leads, and the man comes behind with the cart. They never return to the end of the shelf or to the aisle in question. Instead, they shop at the back portion of the adjacent aisle, the same location where they shopped when they first appear on tape. They reach for the shelf several times, and it appears the man places something in the cart. The couple leaves the aisle at 49:56; the woman leaves first and then the man. The video never shows them returning to the aisle in question.

It is also worth noting that shortly prior to the couple's return to the adjacent aisle, a woman with two children enter the aisle in question at approximately 48:18. They stop their cart near the area where the plaintiff fell. The woman walks closer to the camera and goes out of view while the children remain in the area where the plaintiff fell unattended. It is not clear what the children are doing. Then, at approximately 48:47, two women pull a cart into the area where the plaintiff fell. One child moves their cart to the left side of the aisle, and the two women pass on the right side with their cart. The women walk directly over the area where the plaintiff fell and exit to the right out of the camera's view. The woman and the children leave the area at approximately 50:19 by exiting the aisle in question, walking away from the area of the fall. Finally, at 54:06, a man walks directly over the area where the plaintiff fell. No other people walk over this area until the plaintiff's fall when the video's timer reads 58:24.

As stated above, based on the actions of the couple and other occurrences in the video, this Court cannot conclude that there is an issue of fact that Wal-Mart had actual notice of the floor's condition.

5

Next, the plaintiffs contend that the Court erred in finding no issue of fact regarding constructive notice. "If liability is to be predicated on constructive knowledge by the Defendant, the proof must show the dangerous or defective condition existed for such length of time that the Defendant knew, or in the exercise of ordinary care should have known, of its existence." *Hardesty v. Service Merchandise Co., Inc.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997). "Where there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Id*. at 683. In addition, "[t]he length of time the condition existed is not the only factor to be considered in determining whether or not the proprietor had constructive notice of the danger. One must take into consideration the nature of the business, its size, the number of patrons, the nature of the danger, [and] its location along with the foreseeable consequences." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973).

The plaintiffs cite several cases to support their contention that the Court erred regarding constructive notice. The Court has reviewed them all and will comment on two. In *Abney v. Wal-Mart Stores, Inc.*, No. 97-5014, 1998 WL 80183, at *4 (6th Cir. Feb. 18, 1998), the Court affirmed that there was sufficient evidence to prove that Wal-Mart had constructive notice of a spill which caused a fall. The court stated that there was conflicting evidence presented at trial as to how long the spill was present before the fall. *Id*. The plaintiff's evidence showed that the spill had begun to dry and required scrubbing to clean. *Id*. The defendant presented evidence to the contrary. *Id*. On appeal, the defendant relied upon *Nelson v. The Krystal Co.*, Shelby Law No. 38 (Tenn.Ct.App.W.S. Sept. 12 1984), where plaintiff's only evidence as to constructive notice was that the puddle of water had begun to dry around the edges. *Id*. The trial court did not let the jury consider constructive notice based on this evidence, and the Tennessee Court of

6

Appeals affirmed. *Id*. The *Abney* Court then distinguished *Nelson*. In *Nelson*, the plaintiff did not see the puddle until she returned to the scene of the fall minutes later, and there was no indication that she slipped on the puddle in question. *Id*. The *Abney* Court further noted that there was "clear evidence" that Abney had slipped in the puddle in question, which had begun to dry. *Id*.

Regarding the "method of operations" theory, the *Abney* Court found that the plaintiff had presented evidence that spills were frequent in the store, so Wal-Mart would be liable if "its operations fell short of providing reasonable safety for its customers." *Id*. at *5. The plaintiff presented evidence that safety sweeps were performed every two hours, and the Court stated that this evidence could have supported the jury's verdict. *Id*.

The second case worth comment is *Workman v. Wal-Mart*, M2001-00664-COA-R3-CV, 2002 WL 500988 (Tenn. Ct. App. Apr. 4, 2002). The court stated that the plaintiff presented evidence at trial that a thick, oily substance had leaked from an overturned, cellophane-covered basket and covered a 2 to 2 1/2 feet area on the floor. *Id*. at *3. The court decided that the plaintiff's evidence as to the time elapsed was sufficient for a jury to concluded the defendant had constructive notice. *Id*.

Here, the plaintiffs fail to offer evidence as to the source of the slipperiness. The plaintiffs also fail to present evidence regarding the time the floor became slippery other than the contention that the substance was there long enough to dry. It seems plaintiffs would have one infer that it was shampoo that had spilled and dried, for the plaintiff testified in her deposition that she "assumed" it was shampoo that "they [Wal-Mart] didn't clean up real well." [Doc. 28-2, pg. 4]. She also testified that she did not know what caused it to be slick. [Doc. 28-2, pg. 2]. She offered the explanation that someone may have "over buffed it [the floor] or didn't clean up

7

something that was spilled there." [Doc. 28-2, pg. 2]. Employee Hope Dugger testified in her deposition that there was no evidence of a spill, but the floor in that area was slippery. [Doc. 39-2, pg. 4]. Employee Danielle Calhoun stated in her declaration that she "did not see any residue or foreign material but it was 'slick as ice.'" [Doc. 39-3, pg. 2, ¶ 12]. She further stated, "The condition of the floor was not the result of a fresh spill as the only residue was an invisible dry slippery film." [Doc. 39-3, pg. 2, ¶ 17].

In addition, the plaintiffs state that there is no evidence from the surveillance video that a spill occurred or was cleaned from 10:59 a.m. to the time the plaintiff fell. It is true that the video shows no safety sweep was performed. However, this Court cannot conclude that the video fails to show a spill occurring. The fact is, the video is of a quality that one cannot make out such details. Therefore, the only consistent explanation was that the floor was slippery in the area where the plaintiff fell. There is no definitive evidence that anything was ever spilled or not spilled.

As for the argument regarding how long the spill had been there, the plaintiff essentially argues that the floor had been in that condition for some time because it was dry. The plaintiffs further argue that a timely safety sweep of the floor would have revealed the floor's condition, and a safety sweep was not conducted from 10:59 a.m. until the plaintiff fell at 11:58 a.m. This is still speculative as to the time. First, there is not clear evidence of a spill. Second, assuming it was shampoo that spilled, a thin layer of shampoo could have dried very quickly. Ms. Calhoun stated in her deposition that had she performed a safety sweep she would have detected the floor's condition "by walking on it or by 'the feel' of the push mop." [Doc. 39-3, pg. 2, ¶ 16]. However, she stated in the same declaration, "On examining the floor I did not see any residue or foreign material but it was 'slick as ice.'" [Doc. 39-3, pg. 2, ¶ 12]. This seems to be

8

inconsistent. If she could not see residue or foreign material upon examination, it would be difficult if not impossible to find anything from the "feel" of a push mop. Nonetheless, the plaintiff offers no real evidence as to the length of time the "substance" was on the floor. They only offer an assertion that the area was "dry." This contention does not rise above the speculative level, and "it would be improper to permit the jury to speculate on these vital elements."

In addition, this Court must consider factors other than the length of time the condition existed. This Court must also take into consideration the nature of the danger and its location with the foreseeable consequences. *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). It is undisputed that whatever caused the floor to be slippery was "invisible." [Doc. 39-3, pg. 2, ¶ 17]. It is difficult to argue that a company should have constructive notice of a slippery floor when the "substance" causing the floor to be in that condition is "invisible." In addition, it is undisputed that many shoppers walked over the same area before and after the fall (but prior to cleaning) without slipping or falling.

Moreover, this case is closer to several other cases upon which this Court relies. The first is *Person v. Wal-Mart Stores, Incorporated*, No. 90-5454, 1990 WL 212571, at *1 (6th Cir. Dec. 20, 1990). There, the plaintiff fell on an "unidentified foreign substance on the floor." *Id*. Despite the factual dispute that there was such a substance on the floor, the district court assumed its presence for summary judgment purposes. *Id*. The district court also considered than an employee did a safety sweep of the area thirty minutes prior to the fall. *Id*. The district court concluded that there was not an issue of fact as to constructive notice, and "[a] jury could only speculate about whether the presence of the substance had occurred seconds, minutes, or hours before the accident." *Id*. at *2. The Sixth Circuit upheld the district court's decision and

9

stated that the plaintiffs had "failed to present proof concerning how long the alleged hazard had been present." *Id*. Further, the court found the plaintiffs' arguments regarding the "dangerous method of operation" theory without merit. *Id*. at *3.

In *Knight v. City of Gallatin*, No. 01A01-9705-CV-00213, 1998 WL 13821, at *1 (Tenn. Ct. App. Jan. 16, 1998), the court upheld the lower court's grant of summary judgment because the plaintiff had failed to present evidence of constructive notice. The plaintiff slipped on a sidewalk that was covered in water at the time of her fall. *Id*. However, she alleged the reason for the fall was algae and slime that the city had allowed to accumulate under the water. *Id*. She presented evidence that a person who regularly travels in the area of the fall "noticed a green fungus type slime build-up on the sidewalk 'at least three years ago.'" *Id*. The court found that this evidence was too far removed from the accident in question. *Id*. at *2.

Also, in *Hampton v. Wal-Mart Stores, Inc.*, No. E2004-00401-COA-R3-CV, 2004 WL 2492283, at *1 (Tenn. Ct. App. Nov. 5, 2004), the plaintiff slipped and fell on spilled baby food. The court upheld the lower court's grant of a directed verdict because the plaintiff had failed to present proof that the condition had been of a sufficient duration to provide Wal-Mart with constructive notice. *Id*. Immediately after she fell, an employee arrived with a mop. *Id*. at *2. She argued that this is circumstantial evidence that Wal-Mart knew of the spill. *Id*. She further argued that the baby food had "skimmed over" and that it was "dry on top." *Id*. Thus, she offered these facts as more circumstantial evidence that it had been on the floor long enough for Wal-Mart to have constructive notice. *Id*. The appellate court stated that "a jury considering this evidence could do no more than guess, conjecture or speculate as to its import with respect to the question of the extent of time the baby food had been on the floor. Ms. Hampton presented no

10

evidence regarding how long it would have taken the baby food to assume a 'skimmed over' appearance. . . ." *Id*.

The Court also finds *Compton v. Wal-Mart Stores, East, LP*, No. 3:07-0869, 2008 WL 2783518, (M.D. Tenn. July 16, 2008), helpful. There, the plaintiff slipped and fell on frozen broccoli and cheese which had spilled. *Id*. at *1. The plaintiffs conceded that they did not know how long the broccoli and cheese had been on the floor. *Id*. at *5. The plaintiffs relied upon circumstantial evidence that the cheese sauce had melted out of the container and onto the floor; thus, it was there long enough to give constructive notice. *Id*. The court stated, however, that the plaintiffs provided no evidence on how long it would take for cheese sauce to melt and that a jury could only speculate. *Id*.

In addition, the *Compton* Court also addressed the plaintiffs' method of operations argument. *Id*. at *7-8. The court concluded that "regardless of Wal-Mart's policies, the [plaintiffs] have not produced evidence on which a reasonable jury could conclude that Wal-Mart had constructive notice based on a general or continuing condition." *Id*. at *8.

Based on *Person*, *Knight*, *Hampton*, and *Compton*, this Court finds that summary judgment was appropriate, and this Court declines to grant the plaintiffs' Motions to Alter or Amend the Judgment. The substance was invisible and unidentified. The plaintiffs failed to offer any evidence as to the amount of time the substance was on the floor. If it was dried shampoo, the plaintiff failed to offer any evidence on how long it would take shampoo to dry. Again, with this lack of evidence, the jury could only speculate, that is, draw inference upon inference on the floor's condition. As such, summary judgment was appropriate.

Finally, the plaintiffs argued initially that their case survives summary judgment based on the "method of operation" theory. As stated previously, the Tennessee Court of Appeals set

11

forth the law governing this theory of constructive notice in *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. Ct. App. 2004).

> [I]n Tennessee, plaintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This approach focuses directly on a principle firmly established in our case law—that a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition.
> Allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of "a pattern of conduct, a recurring incident, or a general or continuing condition" such that its presence was reasonably foreseeable to the premises owner.

*Id*. The plaintiffs again focus on Wal-Mart's safety sweep policy. Specifically, the plaintiffs argue that according this particular store's policy, a safety sweep should have been done at least every thirty minutes, that such a sweep would have revealed the condition, and that the spill was not recent because it was invisible and dry. Thus, they argue that this method of operation provides constructive notice.

The plaintiffs failed to present evidence that such spills in the "shampoo aisle" were common or happened regularly. As this Court stated previously, Wal-Mart's maintenance employee testified that during his 23 years in maintenance with Wal-Mart, he had never seen an accident where someone slipped on an invisible substance never identified. He testified he had never encountered a substance that degreaser would not remove, and the employees used degreasers to clean up spills. Moreover, the plaintiffs presented no evidence at all of any spills

12

or instances where people slipped and fell in a similar manner. There is no genuine issue of material fact that the dangerous condition was part of a pattern of conduct, a recurring incident, or a general or continuing condition such that its presence was reasonably foreseeable to Wal-Mart.

## IV. Conclusion

For the reasons set forth above, the motions are DENIED, [Docs. 64 and 66].

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE